UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re REFCO, INC. SECURITIES LITIGATION | No. 07-md-1902 (JSR) |
| This Document Relates to: | |
| KENNETH M. KRYS, et al., Plaintiffs, -against- SCHULTE ROTH & ZABEL LLP, Defendant. | No. 11-cv-1486 (JSR) |

**DEFENDANT'S REPLY MEMORANDUM OF LAW**
**<u>IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT</u>**

CHADBOURNE & PARKE LLP
Attorneys for Defendant
Schulte Roth & Zabel LLP
30 Rockefeller Plaza
New York, NY 10112
(212) 408-5100

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ..............................................................................................................2

I. Plaintiffs Have Failed to State a Malpractice Claim with Respect to the Drafting of the Articles and OM ..........................................................2

A. Plaintiffs Have Failed to Articulate Any Contradiction Between the Articles and the OM ..........................................................2

B. Plaintiffs Have Failed to Plead That Any Alleged Contradiction Between the Articles and the OM Proximately Caused Them Damages ..........................................................2

C. The Individual Investors Do Not Have Standing to Assert Claims Against SRZ ..........................................................4

II. Plaintiffs Have Failed to State a Claim for Malpractice Based on the Redemptions ..........................................................5

A. Defendants Resigned Before the SPhinX Funds Honored Any Redemptions ..........................................................5

B. Plaintiffs' Successor Counsel Had Ample Time to, and Did, Advise Plaintiffs Concerning the Redemption Requests ..........................8

C. Plaintiffs' Were Warned That Investor Redemptions Would Be Subject to Preference Risk and Knowingly Disregarded That Advice ..........................................................8

D. Plaintiffs Are Bound by Their Allegations in Related Complaints ..........9

III. Plaintiffs Have Failed to State a Claim for Malpractice Based on a Conflict of Interest ..........................................................10

CONCLUSION ..........................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

Alpert v. Shea Gould Climenko & Casey,
160 A.D.2d 67 (1st Dep't 1990) ....................5

Black v. White & Case,
280 A.D.2d 407 (1st Dep't 2001) ....................9

Chambers v. Time Warner, Inc.,
282 F.3d 147 (2d Cir. 2002)....................6

Collard & Roe, P.C. v. Vlacancich,
6 Misc. 3d 17 (2d Dep't 2004)....................4

CRT Invs., Ltd. v. Merkin,
29 Misc. 3d 1218(A), 2010 WL 4340433 (N.Y. Sup. May 5, 2010)....................3

Ecuador v. ChevronTexaco Corp.,
376 F. Supp. 2d 334 (S.D.N.Y. 2005)....................3

Hanlin v. Mitchelson,
794 F.2d 834 (2d Cir. 1986)....................6

Krys v. Sugrue
(In re Refco Inc. Secs. Litig.), 2010 WL 1375946 (S.D.N.Y. Feb. 3, 2010)....................4

Krys v. Sugrue
(In re Refco Secs. Litig.), --- F. Supp. 2d ----,
2011 WL 1542508 (S.D.N.Y. Apr. 25, 2011)....................9

Lefkowitz v. Bank of N.Y.,
676 F. Supp. 2d 229 (S.D.N.Y. 2009)....................9

Mega Group, Inc. v. Pechenik & Curro, P.C.,
32 A.D.3d 584 (3d Dep't 2006) ....................5

New Hampshire v. Maine,
532 U.S. 742 (2001)....................9

Pisani v. Staten Island Univ. Hosp.,
440 F. Supp. 2d 168 (E.D.N.Y. 2006) ....................6

Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood,
80 N.Y.2d 377 (1992) ....................4

Sunkist Drinks, Inc. v. Cal. Fruit Growers Exch.,
25 F. Supp. 400 (S.D.N.Y. 1938) ....................................9

Thomas H. Lee Equity Fund V, L.P. v. Grant Thornton LLP,
586 F. Supp. 2d 119 (S.D.N.Y. 2008)....................................4, 5

Unger v. Paul Weiss Rifkind Wharton & Garrison,
265 A.D.2d 156 (1st Dep't 1999) ....................................10

Wallace v. 600 Partners Co.,
86 N.Y.2d 543 (1995) ....................................2

**STATUTES**

Cayman Islands Companies Law Art. 5 ....................................3

Cayman Islands Companies Law Art. 20 ....................................3

Cayman Islands Companies Law Art. 25 ....................................3

Defendant Schulte Roth & Zabel LLP ("SRZ" or "Defendant") respectfully submits this reply memorandum of law in further support of its motion to dismiss the Complaint.[1]

## PRELIMINARY STATEMENT

Plaintiffs' opposition to Defendant's motion to dismiss does nothing to cure the fatal defects in the Complaint. Plaintiffs do not (1) articulate any way in which the Articles and the OM are inconsistent, (2) allege any damages they have suffered as the result of the purported inconsistency, or (3) explain how Plaintiffs have standing to pursue these claims. These failures doom Plaintiffs' claim based on the alleged contradiction between the Articles and the OM.

The Opposition also fails to salvage Plaintiffs' claim regarding the SPhinX Funds' redemptions. It is undisputed that SRZ resigned before a single redemption was honored, and that the SPhinX Funds sought and actually received advice on this very issue from another law firm before honoring any redemptions. Plaintiffs acknowledge that SRZ cannot be held liable for not advising the SPhinX Funds on an issue that successor counsel had ample time to address (and, in fact, did address). Finally, Plaintiffs barely pay lip service to their claim that SRZ operated under some hazy, undefined conflict while representing the SPhinX Funds. For all these reasons, the Complaint should be dismissed in its entirety.

---

[1] In Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion To Dismiss (the "Opposition" or "Opp. Br."), Plaintiffs do not dispute that The Harbor Trust Company, Ltd. has failed to state a cause of action against SRZ. See Def's. Br. at 3 n.1. The claims brought by The Harbor Trust Company, Ltd. should therefore be dismissed.

## ARGUMENT

### I. PLAINTIFFS HAVE FAILED TO STATE A MALPRACTICE CLAIM WITH RESPECT TO THE DRAFTING OF THE ARTICLES AND OM

#### A. Plaintiffs Have Failed to Articulate Any Contradiction Between the Articles and the OM

In response to SRZ's contention that the Articles and the OM are facially consistent, Plaintiffs seek refuge in the mantra that it is a "question of fact" whether an attorney has fallen below the standard of care in drafting a document.[2] (Opp. Br. at 9.) But whether there actually is a discrepancy between the two documents is not a question of fact. See Wallace v. 600 Partners Co., 86 N.Y.2d 543, 548 (1995). And here Plaintiffs have failed to point to one. To the contrary, both the Articles and the OM make clear that, in the event of a liquidation or dissolution, the net assets of the company will be distributed to shareholders in proportion to the number of shares of the relevant class held. (Compl. ¶¶ 74-75); Balber Decl. Exs. 4 at 28, 5 at art. 191(e). Nowhere do the Articles or the OM provide for any mechanism for valuing the "shares of the relevant class" in the event of a liquidation other than by looking at its NAV. No amount of discovery, fact-finding, or Cayman Islands law analysis can change what the documents say on their face. See Wallace, 86 N.Y.2d at 548.

#### B. Plaintiffs Have Failed to Plead That Any Alleged Contradiction Between the Articles and the OM Proximately Caused Them Damages

Plaintiffs have also failed to allege that the claimed contradiction between the Articles and the OM caused them any injury. Rather, Plaintiffs point to "the erroneous investor

---

[2] Capitalized terms not defined herein shall have the meanings described in the Memorandum Of Law In Support Of Defendant's Motion To Dismiss The Complaint, dated May 4, 2011.

expectations" created by the OM as the cause of increased professional fees and other costs that the JOLs could have otherwise avoided. (Opp. Br. at 12.) However, the SPhinX Funds should be indifferent as to how their assets are to be distributed among their shareholders. Using Plaintiffs' example, the question of whether Class A shareholders receive more money than Class B shareholders in a liquidation might result in litigation between members of Class A and Class B, but not between shareholders and the JOLs.

And the question of whether the OM created "erroneous investor expectations" sounds like an investor fraud or negligent misrepresentation claim against the Funds and their management, not a malpractice claim against the Funds' outside counsel. See CRT Invs., Ltd. v. Merkin, 29 Misc. 3d 1218(A), 2010 WL 4340433, at *11-12 (N.Y. Sup. May 5, 2010). The OM, on its face, is "prepared solely for the benefit of persons interested in the proposed sale of [SPhinX Funds] shares," while the Articles is a corporate formation document. See Cayman Islands Companies Law Arts. 5, 20 (2010); Balber Decl. Ex. 4 at v. In the event of a contradiction between the OM and the Articles, the Articles control.[3] See Cayman Islands Companies Law Arts. 20, 25(3) (2010). The JOLs therefore cannot assert a damages claim arising out of an alleged contradiction between the documents.

---

[3] Because the OM has no relevance to the determination of the liquidation distribution method, it is not surprising that there is nothing in the public record in the Cayman Islands proceedings or in the Plaintiffs' periodic reports to SPhinX Funds' investors that would suggest that the "contradictory language of the [OM] and the [Articles]" has been an issue in those proceedings. See Def's. Br. at 13 n.5. Tellingly, Plaintiffs are unable to point to a single document in the Cayman Islands litigation that would demonstrate otherwise. Plaintiffs avoid addressing the lack of support for their allegations by arguing that the Court cannot consider these public filings. (Opp. Br. at 12 n.1.) However, nothing prevents a court from taking judicial notice of the existence and subject matter of foreign proceedings. Ecuador v. ChevronTexaco Corp., 376 F. Supp. 2d 334, 375-76 (S.D.N.Y. 2005).

Plaintiffs also readily acknowledge that no distribution scheme has been approved and that "it is not certain whether any of the Assignors will be disadvantaged by receiving a *pro rata* distribution instead of an NAV-based distribution." (Opp. Br. at 24.) Accordingly, any damages claim brought by Plaintiffs in their capacities as assignees are premature and wholly speculative. Collard & Roe, P.C. v. Vlacancich, 6 Misc. 3d 17, 18-19 (2d Dep't 2004). Moreover, the Cayman Islands court could determine that a NAV-based distribution is appropriate and that the Articles and the OM are consistent, thus resulting in no claim against SRZ whatsoever.

To the extent the Assignors claim to have "suffered harm because the JOLs have incurred significant additional expenses in administering the SPhinX Funds' liquidation" (Opp. Br. at 24), those claims are derivative and cannot be asserted by the Funds' shareholders. See Krys v. Sugrue (In re Refco Inc. Secs. Litig.), 2010 WL 1375946, at *7 (S.D.N.Y. Feb. 3, 2010).

### C. The Individual Investors Do Not Have Standing to Assert Claims Against SRZ

Plaintiffs seek to overcome their lack of standing to bring claims on behalf of individual investors by resort to a negligent misrepresentation theory nowhere alleged in the Complaint. (Opp. Br. at 23-24.) Plaintiffs contend that SRZ's drafting of the OM with the expectation that it would be provided to prospective investors constitutes the "linking conduct" needed to state a claim for liability against a professional by a third party. (Opp. Br. at 23.) However, the law is clear that "linking conduct" requires "some form of direct contact between the [professional] and the plaintiff, such as face-to-face conversation, the sharing of documents, or other substantive communication between the parties." Thomas H. Lee Equity Fund V, L.P. v. Grant Thornton LLP, 586 F. Supp. 2d 119, 127 (S.D.N.Y. 2008) (internal citations and quotations omitted). The cases relied on by Plaintiffs involved opinion letters addressed directly to a specific recipient with the express purpose of inducing that entity's reliance. Prudential Ins. Co. v. Dewey,

Ballantine, Bushby, Palmer & Wood, 80 N.Y.2d 377, 385 (1992); Mega Group, Inc. v. Pechenik & Curro, P.C., 32 A.D.3d 584, 587 (3d Dep't 2006). By contrast, statements made to an open-ended, undefined group -- like prospective investors in the SPhinX Funds -- do not give rise to a duty of care, even when a member of that group relies upon the statement. See Alpert v. Shea Gould Climenko & Casey, 160 A.D.2d 67, 73-74 (1st Dep't 1990).

Moreover, where a professional makes clear that it is not performing services for the benefit of the recipient of the information, no duty of care can exist. Thomas H. Lee Equity Fund, 586 F. Supp. 2d at 127-29. It is clear from the OM that SRZ explicitly disclaimed any such duty to investors. Balber Decl. Ex. 4 at v, 12, 49 ("In connection with the Company's offering and subsequent advice to the Company . . . [SRZ] will not be representing the Shareholders.").

## II. PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR MALPRACTICE BASED ON THE REDEMPTIONS

### A. Defendants Resigned Before the SPhinX Funds Honored Any Redemptions

Plaintiffs do not dispute that SRZ cannot be held liable for failing to provide advice on an issue that successor counsel had ample time to (and, in fact, did) address. Indeed, Plaintiffs themselves characterize the case law as establishing that an attorney cannot be held liable when the attorney "failed to perform a necessary act, and the attorney is replaced by a second attorney who had ample opportunity to perform the act." (Opp. Br. at 18.)[4] Rather, in an attempt to avoid

---

[4] Plaintiffs also suggest that Defendant SRZ's withdrawal from representation of the SPhinX Funds was improper because it prevented SRZ from advising the SPhinX Funds regarding potential bankruptcy issues. (Opp. Br. at 17.) The one case cited by the Plaintiffs for this

(Cont'd on following page)

the clear mandate of these cases, Plaintiffs argue that SRZ was still representing the SPhinX Funds at the time that the SPhinX Funds decided to honor redemptions. (Opp. Br. at 14, 17, 19.) Plaintiffs' argument in turn rests on their allegation that SRZ did not resign until October 31, 2005, one day after the SPhinX Funds allegedly decided to honor redemptions and two days before the first redemptions were honored. (Id. at 14.)

While a plaintiff's allegations ordinarily should be deemed true for purposes of a motion to dismiss, in this case Plaintiffs' allegations are flatly refuted by SRZ's resignation letter and time records, which the Court can consider because they were relied upon in and are integral to the Complaint. (Compl. ¶¶ 86-90); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Pisani v. Staten Island Univ. Hosp., 440 F. Supp. 2d 168, 174 n.4 (E.D.N.Y. 2006).

Pisani, in particular, makes clear that SRZ's resignation letter can be considered in connection with this motion to dismiss. In Pisani, the court held that it could consider a termination letter where the plaintiff alleged that "he was immediately terminated from his position of employment," and based part of his claim on the circumstances giving rise to his termination. See Pisani, 440 F. Supp. 2d at 174 n.4. As in Pisani, Plaintiffs here have based their malpractice claims on the timing and circumstances surrounding SRZ's resignation.

---

(Cont'd from preceding page)

proposition, Hanlin v. Mitchelson, 794 F.2d 834 (2d Cir. 1986), says nothing of the sort. Rather, it held that there was no basis to deny the *pro se* plaintiff leave to amend her complaint, because it would not be "frivolous" to make the claim that the plaintiff's losses arose from malpractice. Hanlin, 794 F.2d at 842. The holding in Hanlin, however, did not reach the question of whether such facts would be sufficient to state a claim for malpractice. See id. Moreover, the Hanlin court made its determination based in large part on the fact that, at the time the deadline in question was blown, "[i]t is not altogether clear that the attorney-client relationship between Hanlin and Mitchelson had terminated." Id. at 841.

(Compl. ¶ 90) ("SRZ resigned from its representation of the Funds on or about October 31, 2005, at the very time the Funds were deliberating regarding the treatment of redemption requests.").

The October 31, 2005 resignation letter leaves no doubt that Defendants resigned on October 25, 2005. The letter states:

> "I am writing to confirm that . . . we have withdrawn from representing [the SPhinX Funds] with respect to matters relating to Refco Inc. (or any of its affiliates) ("Refco") or arising out of transactions with Refco. Our withdrawal from such representation was communicated to you in our telephone conversation of October 25, 2005."

Balber Decl. Ex. 7 at 1.

The Court does not need to rely solely on the resignation letter. The Complaint and the Opposition quote liberally from SRZ's time records and bills. (Opp. Br. at 16; Compl. ¶ 88.) What Plaintiffs do not state is that these time records unambiguously reflect that SRZ stopped working on SPhinX Funds matters on October 25, 2005. There are no time entries in SRZ's time records after October 25, 2005, with the exception of one entry on October 31, 2005 for "matters relating to termination of client relationship." See Balber Second Decl. Exs. 1 & 2.

In the face of this unambiguous and uncontradicted documentary evidence, Plaintiffs offer no basis for their allegation that the resignation took place on October 31, 2005. The Court is not obliged to accept Plaintiffs' unsupported assertion when the documents integral to or incorporated in the Complaint demonstrate otherwise.

But more importantly, even relying on Plaintiffs' allegation that SRZ did not resign until October 31, 2005, it is undisputed that *no redemption was actually honored until after the resignation*. (Compl. ¶¶ 93-95.) Even if this Court were to turn a blind eye to the plain language of the documents referenced in the Complaint and rely solely on what Plaintiffs allege, there would be no dispute that SRZ was not representing the Funds at the time they honored redemptions.

**B. Plaintiffs' Successor Counsel Had Ample Time to, and Did, Advise Plaintiffs Concerning the Redemption Requests**

SRZ's resignation on October 25, 2005 gave the SPhinX Funds ample time to obtain advice from other counsel. When SRZ resigned, it advised the SPhinX Funds that they needed to consider "the question of whether monies received from Refco are subject to potential claims as a consequence of the bankruptcy proceeding," Balber Decl. Ex. 7 at 1, a question the SPhinX Funds knew that SRZ had not advised on before resigning. (Opp. Br. at 14.)

Further, Plaintiffs' own allegations make clear that the SPhinX Funds relied on other counsel for that advice after SRZ resigned. As of October 28, 2005, *three days after SRZ had resigned* (or, alternatively, based on Plaintiffs' assertion, even before SRZ resigned), the SPhinX Funds had agreed with Gibson Dunn on a compulsory redemption strategy. Balber Decl. Ex. 6 ¶ 509. On October 30, 2005, *five days after SRZ resigned* (or, based on Plaintiffs' assertion, the day before SRZ resigned), the SPhinX Funds received information from Gibson Dunn and subsequently decided not to proceed with a compulsory redemption strategy and instead to honor individual redemption requests. Id. It was not until November 2, 2005, *eight days after SRZ resigned* (or, based on Plaintiffs' assertion, two days after SRZ resigned), that the SPhinX Funds began to honor redemption requests. (Compl. ¶ 93.) Plainly, no redemption was honored until after SRZ resigned and after the Funds received advice from successor counsel, Gibson Dunn. These facts fall squarely within the line of cases that hold that counsel is not liable for failing to perform an act which successor counsel has ample time to perform. (See Defs.' Br. at 19.)

**C. Plaintiffs' Were Warned That Investor Redemptions Would Be Subject to Preference Risk and Knowingly Disregarded That Advice**

Plaintiffs' suggestion that Gibson Dunn and SRZ were "concurrent tortfeasors" because neither law firm warned the SPhinX Funds about the risk of honoring redemption requests at full

NAV is flatly contradicted by Plaintiffs' own pleading. (See Opp. Br. at 19.) As Plaintiffs allege, Gibson Dunn expressly advised the SPhinX Funds that they faced preference risk and specifically advised them not to honor redemption requests because of the difficulties in calculating NAV. Balber Decl. Ex. 6 at ¶ 507. These risks were so serious that Gibson Dunn and the SPhinX Funds at one point agreed upon a compulsory redemption of all investors in lieu of honoring individual redemption requests, a course of action that would have shut down the SPhinX Funds. See id. at ¶ 509. The SPhinX Funds' knowing disregard of these warnings undermines their self-serving assertion today that they would not have honored redemptions if SRZ also advised them about the potential risks.

**D. Plaintiffs Are Bound by Their Allegations in Related Complaints**

Plaintiffs' argument that *their own allegations* against Gibson Dunn cannot be relied upon is unavailing. (Opp. Br. at 20 n.6.) A court may take judicial notice of facts alleged in other -- particularly related -- lawsuits. Lefkowitz v. Bank of N.Y., 676 F. Supp. 2d 229, 249 (S.D.N.Y. 2009); Sunkist Drinks, Inc. v. Cal. Fruit Growers Exch., 25 F. Supp. 400, 400 (S.D.N.Y. 1938); see also Krys v. Sugrue (In re Refco Secs. Litig.), --- F. Supp. 2d ----, 2011 WL 1542508, at *1 n.2, *2 n.3 (S.D.N.Y. Apr. 25, 2011).

Furthermore, regardless of the truth of Plaintiffs' assertions regarding Gibson Dunn, Plaintiffs may not now advocate a factual position that is inconsistent with their position in a separate case regarding the same subject matter. See New Hampshire v. Maine, 532 U.S. 742, 750 (2001); Black v. White & Case, 280 A.D.2d 407, 408 (1st Dep't 2001) (malpractice plaintiff could not advocate a factual position inconsistent with the one he took in a previous litigation).

## III. PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR MALPRACTICE BASED ON A CONFLICT OF INTEREST

Finally, Plaintiffs have not identified any alleged conflict of interest between SRZ's representation of the SPhinX Funds and its representation of PlusFunds or Refco, much less explained how such a conflict of interest would have impaired SRZ's advice in this case. The SPhinX Funds and PlusFunds shared a common interest in protecting investor assets. With respect to Refco, the Plaintiffs allege only that SRZ had at one time advised Refco on the organization and structure of its funds. Plaintiffs offer no explanation for why that representation conflicted with SRZ's representation of the SPhinX Funds or what damage was proximately caused by such conflict, and none is apparent. Unger v. Paul Weiss Rifkind Wharton & Garrison, 265 A.D.2d 156, 157 (1st Dep't 1999).

## CONCLUSION

SRZ respectfully requests that the Court grant its motion to dismiss with prejudice.

Dated: June 6, 2011

Respectfully submitted,

CHADBOURNE & PARKE LLP

By *s/Scott S. Balber*

Scott S. Balber
A Member of the Firm
Attorneys for Defendant
Schulte Roth & Zabel LLP
30 Rockefeller Plaza
New York, NY 10112
(212) 408-5100
sbalber@chadbourne.com