UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re REFCO, INC. SECURITIES LITIGATION

No. 07-md-1902 (JSR)

This Document Relates to:

KENNETH M. KRYS, et al.,

                              Plaintiffs,

          -against-

SCHULTE ROTH & ZABEL LLP,

                              Defendant.

No. 11-cv-1486 (JSR)

**DEFENDANT SCHULTE ROTH & ZABEL LLP'S
OBJECTIONS TO THE REPORT AND RECOMMENDATION
OF THE SPECIAL MASTER ON ITS MOTION TO DISMISS**

CHADBOURNE & PARKE LLP
Attorneys for Defendant
    Schulte Roth & Zabel LLP
30 Rockefeller Plaza
New York, New York 10112
(212) 408-5100

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..................................................................................1

SUMMARY OF PLAINTIFFS' ALLEGATIONS .......................................................2

ARGUMENT ..............................................................................................................7

    A.    The Special Master Erred in Holding the Successor Counsel Doctrine
            Inapplicable..............................................................................................7

    B.    SRZ Fulfilled Any Duty It Had to SPhinX by Resigning with Successor
            Counsel Already in Place...........................................................................9

    C.    SRZ Was Not the Proximate Cause of SPhinX's Damages Because Successor
            Counsel Had Sufficient Opportunity to Protect SPhinX's Rights .............11

          1.    A Lawyer's Withdrawal Is Not the Proximate Cause of a Client's Damages
                  when Successor Counsel Has Sufficient Time to Protect the Client's
                  Interests ............................................................................................12

          2.    SRZ Was Not the Proximate Cause of SPhinX's Damages Because Those
                  Damages Were Not Reasonably Foreseeable ..................................13

          3.    The Special Master Erroneously Concluded that There Was Insufficient Time
                  for SPhinX to Obtain Advice from Successor Counsel After SRZ's
                  Withdrawal........................................................................................14

CONCLUSION...........................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

AmBase Corp. v. Davis Polk & Wardwell,
8 N.Y.3d 428 (2007) ....................................................................................7

Charl-Ho Park v. Reizes,
No. 5:06-CV-0843, 2009 U.S. Dist. LEXIS 117077 (N.D.N.Y. Dec. 15, 2009)...........9, 11, 16

Collard & Roe, P.C. v. Vlacancich,
6 Misc. 3d 17 (2d Dep't 2004).....................................................................5

Day v. Davis,
17 Misc. 3d 1138(A) (Sup. Ct. Kings Cnty. 2007) ...........................................8, 17

Decker v. Nagel Rice LLC,
No. 09 Civ. 9878, 2010 WL 2346608 (S.D.N.Y. May 28, 2010).............................3

Depouli v. Barasch McGarry Salzman & Penson,
No. 150123/10, 2011 N.Y. Misc. LEXIS 576 (Sup. Ct. N.Y. Cnty. Jan. 24, 2011)......9, 11, 16

Golden v. Cascione, Chechanover & Purcigliotti,
286 A.D.2d 281 (1st Dep't 2001) .........................................................8, 12, 13, 14

Haywood v. Bureau of Immigration,
372 F. App'x 122 (2d Cir. 2010) ..................................................................15

Hoodho v. Holder,
558 F.3d 184 (2d Cir. 2009).........................................................................15

Icahn v. Todtman, Nachamie, Spizz & Johns, P.C.,
No. 99 CIV 11783, 2001 WL 1160582 (S.D.N.Y. Oct. 1, 2001) ............................5

Jordan v. Phelan,
No. 105183/07, 2008 N.Y. Misc. LEXIS 9450 (Sup. Ct. N.Y. Cnty. May 30, 2008).......13, 15

Katz v. Herzfeld & Rubin, P.C.,
48 A.D.3d 640 (2d Dep't 2008) .............................................................. 8, 12-13, 14

Kregler v. City of New York,
770 F. Supp. 2d 602 (S.D.N.Y. 2011)..............................................................15

Lanoce v. Anderson, Banks, Curran & Donoghue,
259 A.D.2d 965 (4th Dep't 1999) ..................................................................14

Lefkowitz v. Bank of N.Y.,
    676 F. Supp. 2d 229 (S.D.N.Y. 2009)................................................................3

Perks v. Lauto & Garabedian,
    306 A.D.2d 261 (2d Dep't 2003) .............................................................12, 14

Phillips-Smith Specialty Retail Group II, L.P. v. Parker Chapin Flattau & Klimpl, LLP,
    265 A.D.2d 208 (1st Dep't 1999) ..............................................................5

Pisani v. Staten Island Univ. Hosp.,
    440 F. Supp. 2d 168 (E.D.N.Y. 2006) .....................................................3, 17

Ramcharan v. Pariser,
    20 A.D.3d 556 (2d Dep't 2005) .............................................................13

Reibman v. Senie,
    302 A.D.2d 290 (1st Dep't 2003) .....................................................7, 12, 13

Schauer v. Joyce,
    54 N.Y.2d 1 (1981) ..............................................................14

Somma v. Dansker & Aspromonte Assocs.,
    44 A.D.3d 376 (1st Dep't 2007) .......................................................13, 14

United States v. Schlesinger,
    335 F. Supp. 2d 379 (E.D.N.Y. 2004) .....................................................10

Woodson v. Am. Transit Ins. Co.,
    9 Misc. 3d 1117(A) (Sup. Ct. N.Y. Cnty. 2005)................................................11

**STATUTES AND RULES**

Fed. R. Civ. P. 53 ................................................................................1, 7

**OTHER AUTHORITIES**

N.Y. Code of Prof'l Resp. D.R. 2-110................................................................10

N.Y. Code of Prof'l Resp. E.C. 2-35 ..............................................................9-10

N.Y. Code of Prof'l Resp. E.C. 2-41 ................................................................10

N.Y. Code of Prof'l Resp. E.C. 5-14 ................................................................10

Pursuant to Federal Rule of Civil Procedure 53, Defendant Schulte Roth & Zabel LLP ("SRZ"), by and through its attorneys Chadbourne & Parke LLP, hereby submits its objections to the Report and Recommendation (the "R&R") of Special Master Capra (the "Special Master") on its motion to dismiss the complaint filed against it by Plaintiffs Kenneth M. Krys and Margot MacInnis as Joint Official Liquidators of the SPhinX Funds ("SPhinX").

## PRELIMINARY STATEMENT

Plaintiffs seek to hold SRZ liable under a legal malpractice theory for damages allegedly sustained after SRZ, having rendered no advice to SPhinX on the relevant issue, resigned as counsel to SPhinX.  Plaintiffs claim that SPhinX was injured as the result of its decision to honor investor redemption requests in the aftermath of the Refco bankruptcy filing.  But, Plaintiffs' own allegations establish that SPhinX had successor counsel in place with sufficient time and opportunity to protect its rights by the time SRZ withdrew.  Plaintiffs allege that at the time SPhinX made the decision to honor investor redemptions it was represented by another law firm, Gibson, Dunn and Crutcher LLP ("Gibson Dunn"), which was advising SPhinX on precisely that issue.  And, as Plaintiffs acknowledge, SPhinX relied on Gibson Dunn's advice in deciding to honor investor redemptions.  These allegations make clear that SRZ fully discharged any duty that it may have had to SPhinX and that no act or omission by SRZ proximately caused any injury to SPhinX.

In recommending the denial of SRZ's motion to dismiss, the Special Master concluded that Gibson Dunn was not SRZ's successor counsel but rather that, because Gibson Dunn represented SPhinX both before and after SRZ's withdrawal, the two firms were joint tortfeasors.  This finding turns the successor counsel doctrine on its head.  That doctrine is intended to ensure that a client's rights are adequately protected before the withdrawing counsel's responsibilities

are discharged.  The Special Master's reasoning, however, results in the illogical conclusion that the withdrawing attorney (and arguably, the client) is worse off when successor counsel has more time to familiarize itself with the facts.  Gibson Dunn's representation of SPhinX, both before and after SRZ's withdrawal, demonstrates both that SRZ properly discharged any duty that it may have had to SPhinX and that SRZ's alleged negligence could not have been the proximate cause of SPhinX's damages because it was Gibson Dunn, as successor counsel, and not SRZ, that advised SPhinX to honor the redemption requests.

## SUMMARY OF PLAINTIFFS' ALLEGATIONS

Plaintiffs allege that SRZ was negligent in not advising SPhinX in the wake of Refco's bankruptcy.[1]  See Ex. 1, Compl. ¶¶ 80-108.  On October 12, 2005, shortly after Refco revealed a massive internal fraud, SPhinX withdrew $312 million from an account at Refco Capital Markets ("RCM"), transferring the money first to Refco LLC and later to other financial institutions. Ex. 1, Compl. ¶ 45.  SPhinX understood that the transfer of the $312 million out of RCM could be deemed a preferential payment subject to "claw back" by a trustee appointed in the Refco bankruptcy.  Ex. 1, Compl. ¶¶ 9, 83.  When various SPhinX investors sought to redeem their

---

[1]  Plaintiffs also asserted a malpractice claim based on the theory that SRZ was responsible for drafting inconsistencies in SPhinX's organizational documents.  Complaint ("Compl.") at ¶¶ 72-79, attached as Ex. 1 to the Declaration of Scott S. Balber, dated May 4, 2012 (the "Balber Decl.").  The Special Master recommended denying SRZ's motion to dismiss those allegations on the grounds that they raised a question of fact.  See Report and Recommendation of the Special Master on Motion to Dismiss ("R&R") at 5-7, attached as Ex. 2 to Balber Decl. Subsequently, Plaintiffs voluntarily dismissed with prejudice any claim based on the organizational documents.  See Stipulation of Voluntary Dismissal with Prejudice, attached as Ex. 3 to the Balber Decl.  That section of the R&R is therefore now moot.

interests in the funds, SPhinX became concerned about honoring redemption requests in light of the risk of a Refco preference action. Ex. 1, Compl. ¶¶ 9, 82-84.

Plaintiffs allege that SPhinX sought advice from at least two law firms concerning the implications of the Refco bankruptcy: Gibson Dunn, beginning on October 12, 2005, and SRZ, beginning on October 13, 2005. See Amended Complaint in Krys v. Sugrue (the "Sugrue Compl.") at ¶ 505, attached as Ex. 4 to the Balber Decl.; Ex. 1, Compl. ¶ 86.[2]  Plaintiffs contend that SPhinX sought advice from both firms over the course of the next several days with regard to the potential for a preference action and the effect, if any, of honoring investor redemptions while the risk of a preference action was extant. Ex. 1, Compl. ¶¶ 9, 82-87; Ex. 4, Sugrue Compl. ¶¶ 506-09.  However, on October 25, 2005 -- twelve days after SPhinX allegedly requested advice relating to the Refco bankruptcy -- SRZ resigned from its representation of SPhinX with respect to matters relating to Refco or its affiliates, before giving any advice on the subject. Ex. 1, Compl. ¶ 90; Letter of Resignation ("Resignation Ltr."), attached as Ex. 5 to the Balber Decl.[3]  In its resignation letter, SRZ stated:

---

[2]  This Court may consider Plaintiffs' allegations against Gibson Dunn as set forth in the Sugrue Complaint.  See Ex. 4, Sugrue Compl.  The Court can take judicial notice of "undisputed facts . . . from prior opinions and publicly filed court documents."  See Decker v. Nagel Rice LLC, No. 09 Civ. 9878, 2010 WL 2346608, at *1 n.2 (S.D.N.Y. May 28, 2010) (citing Lefkowitz v. Bank of N.Y., 676 F. Supp. 2d 229, 249 (S.D.N.Y. 2009)).  As the Special Master acknowledged in the R&R, "[t]he Plaintiffs do not dispute that after Schulte Roth resigned, Gibson Dunn continued to advise SPhinX and PlusFunds regarding how to deal with redemption requests."  R&R 12. Accordingly, the Special Master's reluctance to hold Plaintiffs to their allegations regarding Gibson Dunn in the Sugrue Complaint was misplaced.  See R&R 12 n.5.

[3]  The Court may rely on the content of SRZ's resignation letter, which Plaintiffs have not challenged, because the circumstances and the date of SRZ's resignation are expressly referenced in the Complaint.  See Pisani v. Staten Island Univ. Hosp., 440 F. Supp. 2d 168, 173 nn.3 & 4 (E.D.N.Y. 2006).

"I am writing to confirm that . . . we have withdrawn from representing PlusFunds Group Inc. ('PFG') and the various investment funds that are sponsored or advised by PFG (the [SPhinX] 'Funds') with respect to matters relating to Refco Inc. (or any of its affiliates) ('Refco') or arising out of transactions with Refco. Our withdrawal from such representation was communicated to you in our telephone conversation of October 25, 2005. . . . As you requested, I can confirm to you that we have not advised either PFG or the [SPhinX] Funds regarding the actions, if any, that are required to be taken by PFG or the [SPhinX] Funds as a result of matters relating to Refco's bankruptcy. . . . [T]he boards of directors of the [SPhinX] Funds should be made aware of, and consider, all relevant matters relating to the Refco situation (including the question of whether monies received from Refco are subject to potential claims as a consequence of the bankruptcy proceeding) insofar as they may have a bearing on the pricing of shares of the [SPhinX] Funds and the disclosure obligations of the [SPhinX] Funds."

Ex. 5, Resignation Ltr. 1. According to Plaintiffs, Gibson Dunn continued to advise SPhinX with regard to the Refco bankruptcy, specifically advising SPhinX on preference and redemption issues. Ex. 4, Sugrue Compl. ¶¶ 507, 509. Plaintiffs allege that after receiving advice from Gibson Dunn, SPhinX decided to honor investor redemption requests totaling $115,025,000 between November 2, 2005 and December 12, 2005. Ex. 1, Compl. ¶¶ 93-94; Ex. 4, Sugrue Compl. ¶ 509. RCM's unsecured creditors committee subsequently filed a preference action against SPhinX Managed Futures Fund SPC on December 15, 2005, seeking to claw back the October 12, 2005 $312 million transfer from Refco LLC. Ex. 1, Compl. ¶ 96. Plaintiffs claim that they were left with insufficient assets to satisfy a potential judgment in that preference action and were forced to settle it on unfavorable terms. Ex. 1, Compl. ¶¶ 102-03.[4] Though Plaintiffs do not specify the amount of damages sought, the R&R states that "Plaintiffs' claim essentially

---

[4] Plaintiffs assert this claim despite the fact that a temporary restraining order was entered on December 16, 2005, freezing more than $312 million of SPhinX's assets, enough to satisfy the preference claim in its entirety. Temporary Restraining Order, Official Committee of Unsecured Creditors of Refco Inc. v. SPhinX Managed Futures Fund SPC, attached as Ex. 6 to the Balber Decl.

seeks the difference between what SPhinX would have recovered if permitted to take part in the Refco bankruptcy proceeding, less the amount -- approximately $49 million -- that SPhinX was allowed to keep in the settlement of the preference action."[5]  Ex. 2, R&R 4.

Plaintiffs assert that SRZ committed malpractice by failing to advise SPhinX to refrain from honoring redemption requests or, in the alternative, to establish a reserve for the preference risk.  Ex. 1, Compl. ¶ 89.  Plaintiffs further allege that SRZ failed to advise SPhinX regarding the potential implications of Bankruptcy Code § 502(d) ("Section 502(d)") and that had SPhinX known about Section 502(d), it would not have honored the redemption requests.  Ex. 1, Compl. ¶¶ 102-08, 116.[6]  SRZ, however, resigned from the representation before giving any advice at a time when Gibson Dunn, the successor counsel that ultimately did give SPhinX advice, was already in place.  Ex. 1, Compl. ¶ 90; Ex. 4, Sugrue Compl. ¶¶ 505-09.

SRZ moved to dismiss the Complaint on the grounds that Plaintiffs failed to allege any actionable breach of SRZ's duty of care or any causal link between the allegedly deficient advice and SPhinX's alleged damages.  Memorandum of Law in Support of Defendant's Motion to

---

[5] However, the prospect of a hypothetical recovery by SPhinX in the Refco bankruptcy proceedings and the amount of any such recovery is purely speculative.  "Contentions underlying a claim for legal malpractice which are 'couched in terms of gross speculations on future events and point to the speculative nature of plaintiffs' claim,' are insufficient as a matter of law to establish that defendants' negligence, if any, was the proximate cause of plaintiffs' injuries."  Phillips-Smith Specialty Retail Group II, L.P. v. Parker Chapin Flattau & Klimpl, LLP, 265 A.D.2d 208, 210 (1st Dep't 1999); accord Collard & Roe, P.C. v. Vlacancich, 6 Misc. 3d 17, 18-19 (2d Dep't 2004); Icahn v. Todtman, Nachamie, Spizz & Johns, P.C., No. 99 CIV 11783, 2001 WL 1160582, at *8 (S.D.N.Y. Oct. 1, 2001).

[6] Plaintiffs contend that under Section 502(d) a party that is unable to satisfy a judgment rendered in a preference action forfeits its claim against the bankruptcy estate.  See Ex. 1, Compl. ¶¶ 102-03.

Dismiss the Complaint ("Def. Mem.") at 16-17, attached as Ex. 7 to the Balber Decl.  SRZ

argued that because SPhinX decided to honor redemptions after SRZ withdrew and while

SPhinX was being advised by successor counsel, Plaintiffs could not state a claim that SRZ

proximately caused any injury that SPhinX suffered.  Ex. 7, Def. Mem. 17-19.

On April 9, 2012, the Special Master issued the R&R, which recommended denying in

part and granting in part the motion to dismiss.[7]  The Special Master concluded that the

Complaint raised a question of fact as to whether SRZ's alleged failure to inform SPhinX of the

existence of Section 502(d) was an act of legal malpractice.  Ex. 2, R&R 11.  Further, the Special

Master concluded that SRZ's negligence could have proximately caused SPhinX's harm despite

SRZ's withdrawal and Plaintiffs' own allegation that SPhinX received and relied upon advice

from successor counsel after SRZ resigned.  Ex. 2, R&R 11-15.  In so holding, the Special

Master rejected the application of well-settled New York law regarding the successor counsel

doctrine, finding instead that the simultaneous representation of SPhinX by both Gibson Dunn

and SRZ prior to SRZ's resignation removed the case from the ambit of the doctrine and instead

made the law firms "joint tortfeasors."  Ex. 2, R&R 14.

---

[7] The Special Master recommended dismissal of those portions of Plaintiffs' Complaint asserting claims on behalf of Harbor Trust Co. Ltd. and the Assignors.  R&R 17.  This portion of the R&R should be adopted on the ground that the Special Master correctly found that these parties failed to state actionable claims because no damages are claimed on behalf of Harbor Trust Co. Ltd. and those claimed on behalf of the Assignors were derivative of those suffered by SPhinX.  Further, the Assignors had no privity of contract with SRZ, depriving them of the right to bring a malpractice claim.  To the extent that the motion to dismiss was denied with regard to the alleged deficiencies in SPhinX's organizational documents, that point is moot in light of the Stipulation of Voluntary Dismissal with Prejudice.  See note 1, supra.

## ARGUMENT

In reviewing the R&R, this Court "must decide de novo all objections to conclusions of law made or recommended" by the Special Master.  Fed. R. Civ. P. 53(f)(4).  To state a claim for legal malpractice, Plaintiffs must allege that (1) SRZ breached a duty owed to SPhinX and (2) but for the breach of that duty, SPhinX would not have suffered damages.  See AmBase Corp. v. Davis Polk & Wardwell, 8 N.Y.3d 428, 434 (2007).  "The failure to establish proximate cause mandates the dismissal of a legal malpractice action, regardless of the negligence of the attorney." Reibman v. Senie, 302 A.D.2d 290, 291 (1st Dep't 2003).

## A.   The Special Master Erred in Holding the Successor Counsel Doctrine Inapplicable

The Special Master concluded that "this is not a case of successor counsel" because it "is not a case where one counsel messed up, the plaintiff then got a new counsel, and the new counsel failed to clean up the mess." Ex. 2, R&R 14.  The Special Master emphasized that Gibson Dunn and SRZ were retained at the same time to advise SPhinX concerning redemptions, making "this case look[] more like joint tortfeasors, jointly and severably [sic] liable, than it does like the [successor counsel] cases cited by [SRZ]." Id.  The Special Master noted that "[t]he fact that both (allegedly) failed to provide adequate advice makes the proximate cause argument much stronger than in the cases cited by [SRZ], in which the actions of the two lawyers are separated in time." Id.  The Special Master concluded -- although the Complaint does not

allege -- that SPhinX wanted two opinions and the failure of both firms to advise about Section 502(d) meant that the firms would be jointly and severally liable to SPhinX.[8]  Id.

The Special Master's reasoning cannot be reconciled with the well-established successor counsel doctrine under New York law.  That doctrine provides that an attorney who withdraws from representing a client will not be held liable for any subsequent harm that the client might suffer if successor counsel has sufficient time to protect the client's rights.  See Katz v. Herzfeld & Rubin, P.C., 48 A.D.3d 640, 641 (2d Dep't 2008) (holding that, because successor counsel had sufficient opportunity to protect client's rights upon prior counsel's withdrawal, prior counsel's actions were not the proximate cause of client's injuries); Golden v. Cascione, Chechanover & Purcigliotti, 286 A.D.2d 281, 281-82 (1st Dep't 2001) (same); cf. Day v. Davis, 17 Misc. 3d 1138(A) (Sup. Ct. Kings Cnty. 2007) (withdrawing attorney did not breach duty to client when resignation allowed ample time to retain substitute counsel).  The fact that SPhinX retained Gibson Dunn before SRZ withdrew does not undermine, but rather supports, the conclusion that SPhinX was left with counsel that had more than sufficient time to protect its rights.

The conclusion that simultaneous representation of a client can only result in joint tortfeasor liability -- even when one firm withdraws from the representation, without having rendered any legal advice on the subject, leaving the other firm as sole counsel -- defies logic. The successor counsel doctrine protects a withdrawing lawyer from liability when successor counsel has ample time to protect the client's rights.  See Golden, 286 A.D.2d at 281-82; see also

---

[8]  Neither the Special Master nor Plaintiffs have identified a single case in New York or elsewhere holding a law firm liable for failing to provide what amounts to a second opinion. SRZ respectfully submits that no such case exists.

Depouli v. Barasch McGarry Salzman & Penson, No. 150123/10, 2011 N.Y. Misc. LEXIS 576, at *8-9 (Sup. Ct. N.Y. Cnty. Jan. 24, 2011); Charl-Ho Park v. Reizes, No. 5:06-CV-0843, 2009 U.S. Dist. LEXIS 117077, at *13-16 (N.D.N.Y. Dec. 15, 2009). It does not follow that the doctrine somehow ceases to apply when the successor counsel was retained before the withdrawing counsel. Indeed, the client is in a better position relying on the advice of existing counsel that is already familiar with the facts, rather than relying on new counsel that is brought in to pick up the pieces of a prior representation with limited time to adequately advise the client.

The Special Master thus misconstrued the successor counsel doctrine, resulting in erroneous conclusions regarding the questions of whether SRZ breached any duty to SPhinX and whether the alleged breach proximately caused damages to SPhinX.

**B.    SRZ Fulfilled Any Duty It Had to SPhinX by Resigning with Successor Counsel Already in Place**

Plaintiffs do not allege, and the Special Master did not find, that SRZ provided SPhinX with incorrect advice, or any advice at all, regarding the question of whether to honor investor redemptions. Ex. 2, R&R 10. Rather, the Special Master found that Plaintiffs adequately pled a breach of duty by alleging that SRZ failed to advise SPhinX of the existence of Section 502(d). Ex. 2, R&R 11. This conclusion is based on the premise that, once it had been retained, the only way SRZ could have satisfied its obligation to SPhinX was to inform it of every "law or legal or factual condition that would have a significant impact on [its] conduct," including, allegedly, Section 502(d). See Ex. 2, R&R 10. However, the Special Master ignores a well-recognized alternative -- resignation before any advice was given, with existing and soon to be successor counsel already in place.

It is axiomatic that a lawyer may decline to undertake representation of a client. See N.Y. Code of Prof'l Resp. E.C. 2-35 ("A lawyer is under no obligation to act as advisor or

advocate for every person who may wish to become a client . . . .").[9]  Indeed, a lawyer's ethical

duty sometimes obliges him to decline or withdraw from a representation.  See N.Y. Code of

Prof'l Resp. D.R. 2-110(B) (detailing conditions for mandatory withdrawal); N.Y. Code of Prof'l

Resp. E.C. 5-14 ("Maintaining the independence of professional judgment required of a lawyer

precludes acceptance or continuation of employment that will adversely affect the lawyer's

judgment on behalf of or dilute the lawyer's loyalty to a client."); United States v. Schlesinger,

335 F. Supp. 2d 379, 384 (E.D.N.Y. 2004).  In the event of withdrawal, it becomes the lawyer's

duty to take all "steps . . . to avoid foreseeable prejudice to the rights of the client."  N.Y.  Code

of Prof'l Resp. D.R. 2-110(A)(2).  It is the lawyer's duty to "protect the welfare of the client by

giving due notice of the withdrawal, suggesting employment of other counsel, . . . cooperating

with counsel subsequently employed, and otherwise endeavoring to minimize the possibility of

harm."  N.Y. Code of Prof'l Resp. E.C. 2-41.

     Here, Plaintiffs' own allegations establish that SRZ fully discharged any duty it may have

had as a matter of law by taking all possible steps to avoid prejudice to SPhinX upon its

withdrawal.  SPhinX was fully aware of the possibility that the $312 million transferred from

RCM could be clawed back and that honoring investor redemptions posed a risk in light of a

potential preference action.  Ex. 1, Compl. ¶¶ 9, 82-84; Ex. 2, R&R 10.  Upon withdrawal, SRZ

confirmed in writing that it had given no advice to SPhinX and had discharged its duty to avoid

prejudice to SPhinX by making sure that SPhinX was aware of the risk associated with its

situation and by expressly warning SPhinX that it should carefully consider all relevant matters

---

[9]  The N.Y. Code of Professional Responsibility cited herein was repealed in 2009; however, it
was in force at the time of the events at issue in this case and is thus relevant.

relating to the Refco situation and the monies received from Refco.  See Ex. 5, Resignation

Ltr. at 1.  And, based on Plaintiffs' own allegations, SPhinX could not have been prejudiced as a

matter of law because after SRZ withdrew SPhinX continued to receive and act on the advice of

Gibson Dunn, a firm with substantial bankruptcy experience and expertise, "regarding how to

deal with redemption requests."  Ex. 2, R&R 12; Ex. 4, Sugrue Compl ¶¶ 505-09.  It was only

after obtaining that advice from Gibson Dunn that SPhinX decided to honor redemptions.  Ex. 4,

Sugrue Compl. ¶ 509.  That SPhinX had sufficient time to obtain the needed advice, and in fact

had counsel in place who provided the requested advice, makes clear that SRZ properly

withdrew before giving any advice, did not prejudice SPhinX's rights, and therefore breached no

duty to its client.  Thus, the Special Master's conclusion that there was a "fact question as to

whether failure to inform SPhinX of the existence of Section 502(d) was an act of legal

malpractice" is wrong.  Ex. 2, R&R 11; see Woodson v. Am. Transit Ins. Co., 9 Misc. 3d

1117(A) (Sup. Ct. N.Y. Cnty. 2005) (finding that an attorney's duty to act for a client ended once

the relationship ended); see also Charl-Ho Park v. Reizes, No. 5:06-CV-0843, 2009 U.S. Dist.

LEXIS 117077, at *12-16 (N.D.N.Y. Dec. 15, 2009) (dismissing case alleging that client was

prejudiced by withdrawal 20 days before trial where replacement counsel was experienced and

familiar with the facts); Depouli v. Barasch McGarry Salzman & Penson, No. 150123/10, 2011

N.Y. Misc. LEXIS 576, at *10-11 (Sup. Ct. N.Y. Cnty. Jan. 24, 2011) (dismissing complaint

alleging that attorney allowed insufficient time to find successor counsel where plaintiff was

aware of need for further legal action in personal injury suit three days before deadline).

C.      **SRZ Was Not the Proximate Cause of SPhinX's Damages Because Successor
        Counsel Had Sufficient Opportunity to Protect SPhinX's Rights**

        Even if SRZ's alleged failure to inform SPhinX about Section 502(d) raises a question of

fact regarding SRZ's duty, the Complaint should nonetheless be dismissed because Gibson

Dunn's continued representation of SPhinX after SRZ's withdrawal demonstrates that SRZ's alleged negligence could not have been the proximate cause of SPhinX's alleged injury. This provides an independent basis for dismissal. See Reibman v. Senie, 302 A.D.2d 290, 291 (1st Dep't 2003) ("The failure to establish proximate cause mandates the dismissal of a legal malpractice action, regardless of the negligence of the attorney."). The Special Master acknowledged that the successor counsel doctrine may break the chain of causation, but reasoned that proximate cause was present here because it was "reasonably foreseeable" that the damages incurred could follow from the allegedly wrongful actions of SRZ. Ex. 2, R&R 13-14 & n.6. As set forth below, the Special Master's conclusions rest on a series of misapplications of the law and unwarranted assumptions.

1.    **A Lawyer's Withdrawal Is Not the Proximate Cause of a Client's Damages when Successor Counsel Has Sufficient Time to Protect the Client's Interests**

Well-settled New York law establishes that a lawyer's alleged negligence cannot be the proximate cause of a client's injuries when successor counsel has had sufficient opportunity to protect the client's rights. See, e.g., Golden v. Cascione, Chechanover & Purcigliotti, 286 A.D.2d 281, 281-82 (1st Dep't 2001) (counsel's alleged failures could not be the proximate cause of plaintiff's harm where sufficient time remained for successor counsel to protect plaintiff's rights); Perks v. Lauto & Garabedian, 306 A.D.2d 261, 261-62 (2d Dep't 2003) (counsel's alleged failure to investigate could not be the proximate cause of plaintiff's harm where defendant counsel was discharged prior to settlement and successor counsel represented plaintiff during the time preceding settlement); see also Katz v. Herzfeld & Rubin, P.C., 48 A.D.3d 640, 641 (2d Dep't 2008) (initial counsel not liable for malpractice because alleged failures did not proximately cause low settlement amount where successor counsel represented

client prior to settlement); Somma v. Dansker & Aspromonte Assocs., 44 A.D.3d 376, 377 (1st

Dep't 2007) (no liability of initial counsel for low settlement amount when successor counsel

represented plaintiff at time of settlement); Ramcharan v. Pariser, 20 A.D.3d 556, 557 (2d Dep't

2005) (no liability of initial counsel for missed deadline where successor counsel had sufficient

time to respond to CPLR 3216 demand before deadline).

      Thus, a plaintiff bringing a malpractice claim based upon an attorney's withdrawal must

allege "facts tending to show that successor counsel did not have sufficient time" to protect the

client's rights.  Jordan v. Phelan, No. 105183/07, 2008 N.Y. Misc. LEXIS 9450, at *4-5 (Sup.

Ct. N.Y. Cnty. May 30, 2008).  Absent this showing, a plaintiff cannot establish proximate cause

and, as a matter of law, the claim must be dismissed.  Id.; see also Reibman, 302 A.D.2d at 291.

### 2.   SRZ Was Not the Proximate Cause of SPhinX's Damages Because Those Damages Were Not Reasonably Foreseeable

      The Special Master concluded that "proximate causation is present where it was

'reasonably foreseeable' that the damage incurred would follow from the wrongful act," even if

another party could have prevented those damages.  Ex. 2, R&R 13 (citation omitted).  But, as

the successor counsel line of cases makes clear, when a lawyer resigns and its client is

subsequently advised by other counsel who is in a position to protect the client's interests, any

resulting damages are not the "natural and probable consequence" of the initial lawyer's

withdrawal or failure to give advice.  See Ex. 2, R&R 13; see also Golden, 286 A.D.2d

at 281-82.  Because Gibson Dunn was already representing SPhinX at the time of SRZ's

withdrawal, it was not reasonably foreseeable that SRZ's alleged failure to advise on Section

502(d) would lead to SPhinX's alleged damages.  Rather, SRZ could reasonably foresee only

that SPhinX had ample opportunity to and did, in fact, obtain advice from another law firm.

Ex. 4, Sugrue Compl. ¶¶ 507, 509.  As such, SRZ's withdrawal was not (and could not possibly

have been) the proximate cause of SPhinX's alleged damages as a matter of law.

　　　Similarly, the Special Master's reliance on cases holding that successor counsel can be

liable to a client for failing to remedy or mitigate the damage caused by the prior counsel's

negligence is misplaced.  See Ex. 2, R&R 13-14.  Those cases involve situations in which the

successor counsel's negligence foreseeably led to additional damages.  Schauer v. Joyce, 54

N.Y.2d 1 (1981) (denying a motion to dismiss a third party complaint brought by one attorney

against successor counsel, claiming that the failure of successor counsel to correct prior

attorney's mistake in a timely manner aggravated or contributed to the client's injury); Lanoce v.

Anderson, Banks, Curran & Donoghue, 259 A.D.2d 965 (4th Dep't 1999) (reinstating claim

against successor counsel who failed to revive the untimely claim filed by previous counsel).

That is not the situation alleged here.  Plaintiffs do not contend that Gibson Dunn, as successor

counsel, aggravated a harm already set in motion by SRZ.  Rather, it is Gibson Dunn, not SRZ,

that provided advice to SPhinX after SRZ withdrew and before any alleged damage was

sustained.  Gibson Dunn had sufficient opportunity to fully prevent the alleged harm and was not

called upon to mitigate or remedy a harm caused by SRZ.  See, e.g., Golden, 286 A.D.2d at

281-82; Perks, 306 A.D.2d at 261-62; see also Katz, 48 A.D.3d at 641; Somma, 44 A.D.3d at

377.

### 3.　The Special Master Erroneously Concluded that There Was Insufficient Time for SPhinX to Obtain Advice from Successor Counsel After SRZ's Withdrawal

　　　The Special Master concluded that even if the successor counsel doctrine applied, a

question of fact existed as to whether Gibson Dunn had sufficient time to protect SPhinX's

interests.  Ex. 2, R&R 15.  The Special Master noted that the time period between the date of

SRZ's withdrawal and the date on which SPhinX decided to honor redemptions was too short as compared to the time periods deemed sufficient in other successor counsel cases.  Id.

However, Plaintiffs nowhere allege that SPhinX's successor counsel had insufficient time to advise SPhinX, or that a period of a few days was insufficient for SPhinX to obtain advice from Gibson Dunn or other counsel concerning redemptions.[10]  To the contrary, Plaintiffs have taken the position that advice on the implications of Section 502(d) would only have taken "about two seconds" to obtain.  Transcript of Oral Argument ("Hearing Tr.") at 137:22-25, attached as Ex. 8 to the Balber Decl.[11]  Further, Plaintiffs allege that Gibson Dunn was engaged on these matters as early as October 12, 2005, the day before Plaintiffs claim that SRZ was engaged on these matters and the date of the transfer of the $312 million out of RCM.  Ex. 4, Sugrue Compl. ¶ 505; Ex. 1, Compl. ¶ 86.  Thus, unlike situations in which successor counsel has only the time period after the other counsel withdraws to advise the client, Gibson Dunn had the additional period leading up to SRZ's resignation to advise on these matters.

---

[10] Plaintiffs' failure to plead that there was insufficient time for successor counsel to advise on redemptions by itself requires dismissal of this action.  See Jordan, 2008 N.Y. Misc. LEXIS 9450, at *4-5.

[11] Representations by Plaintiffs' counsel during oral argument are judicial admissions that bind the Plaintiffs, and Plaintiffs thus cannot dispute that obtaining advice on redemptions would have taken very little time.  See Kregler v. City of New York, 770 F. Supp. 2d 602, 607 (S.D.N.Y. 2011) ("[A]bsent egregious circumstances, a distinct and formal admission made before, during, or even after a proceeding by an attorney acting in his professional capacity binds his client as a judicial admission.") (quoting Haywood v. Bureau of Immigration, 372 F. App'x 122, 124 (2d Cir. 2010)); see also Hoodho v. Holder, 558 F.3d 184, 191 (2d Cir. 2009) ("Judicial admissions are not evidence at all.  Rather, they are formal concessions in the pleadings in the case or stipulations by a party or counsel that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.  Thus, a judicial admission, unless allowed by the court to be withdrawn, is conclusive in the case . . . .") (internal citations omitted).

Moreover, the critical question is not whether the time period for successor counsel to advise the client is short or long, but whether the time period provides sufficient opportunity to protect the client.  Courts have found that a period as short as three days was sufficient to protect the client's rights and to justify dismissal of a complaint as a matter of law.  See Depouli v. Barasch McGarry Salzman & Penson, No. 150123/10, 2011 N.Y. Misc. LEXIS 576, at *8-9 (Sup. Ct. N.Y. Cnty. Jan. 24, 2011) (dismissing allegations that counsel had only provided client with three days for successor counsel to file claim); see also Charl-Ho Park v. Reizes, No. 5:06-CV-0843, 2009 U.S. Dist. LEXIS 117077, at *13-16 (N.D.N.Y. Dec. 15, 2009) (dismissing allegations that counsel's resignation 20 days before trial left successor counsel with insufficient time to protect the client's interest).  Plaintiffs have admitted that even less time than three days would have been sufficient to advise SPhinX regarding Section 502(d).  Ex. 8; Hearing Tr. 137:22-25.  Here, where Plaintiffs do not even allege that there was insufficient time, a claim cannot be stated on that basis.

Additionally, the Special Master's assumption that SPhinX had only a few days to obtain advice regarding redemptions is without basis in the Complaint.  The Special Master presumed that in order to avoid the alleged damage caused by honoring redemptions, SPhinX had to receive advice on Section 502(d) by November 2, 2005, the date on which SPhinX first honored redemptions.  Ex. 2, R&R 15.  The Special Master acknowledged that Plaintiffs do not plead that November 2 was the deadline, but reasoned that "it is plausible to believe that, after disclosure of the Refco Fraud, SPhinX and PlusFunds would be under pressure to decide quickly about what to do regarding redemptions."  Ex. 2, R&R 15 n.7.  There are no allegations in the Complaint or otherwise that support the Special Master's conclusion that SPhinX was compelled to make a decision on redemptions by November 2.  But even if the Special Master were correct, the

implication would be that Gibson Dunn had twenty-two days (between October 12, the date it was asked for advice on these matters, and November 2) to render advice, whereas SRZ had only twelve days (between October 13, the date it was allegedly asked for advice on these matters, and October 25, the date of its resignation).[12]  If twelve days was sufficient time for SRZ to render advice regarding Section 502(d), then twenty-two days was surely enough time for Gibson Dunn.

Plaintiffs fail to plead that there was insufficient time to obtain advice from successor counsel and thus fail to establish that SRZ's alleged negligence was the proximate cause of SPhinX's alleged harm.  Accordingly, the claim should be dismissed.

## CONCLUSION

For all the reasons set forth herein, SRZ respectfully requests that this Court grant its Motion to Dismiss with prejudice.

---

[12] The Special Master's finding that a question of fact existed regarding the date of termination appears to be based on a misreading of SRZ's resignation letter.  In the R&R, October 25 is described as the date "when [SRZ] sent a resignation letter," and October 31 as the date "when the parties communicated with each other and explicitly terminated the representation." R&R 15.  In fact, SRZ's resignation letter expressly states that SRZ's "withdrawal from [representing SPhinX with respect to matters relating to Refco] was communicated to [SPhinX] in our telephone conversation of October 25, 2005." Ex. 5, Resignation Ltr. 1.  When assessing whether counsel's withdrawal allowed sufficient time to obtain advice from successor counsel, the operative date is the date that counsel gave notice of its impending withdrawal and not the date of the formal withdrawal itself.  See Day v. Davis, 17 Misc. 3d 1138(A) (Sup. Ct. Kings Cnty. 2007).  The Court is entitled to rely on the content of SRZ's resignation letter, which Plaintiffs have not challenged, to determine the date of notice of withdrawal.  See Pisani v. Staten Island Univ. Hosp., 440 F. Supp. 2d 168, 173 nn.3 & 4 (E.D.N.Y. 2006).

Dated:   May 4, 2012

                              Respectfully submitted,

                              CHADBOURNE & PARKE LLP

                              By   _____
                                        Scott S. Balber
                                        A Member of the Firm
                                   Attorneys for Defendant
                                        Schulte Roth & Zabel LLP
                                   30 Rockefeller Plaza
                                   New York, New York 10112
                                   (212) 408-5100
                                   sbalber@chadbourne.com

Of Counsel:   Marcelo M. Blackburn
              Nicolas A. Stebinger
              Erin M. Shinneman